**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MICHAEL RENZI<br>Plaintiff | : | |
| -vs- | : | C.A. NO. 05-290T |
| DELOITTE SERVICES LP<br>Defendants | : | |

**PLAINTIFF MICHAEL RENZI'S MEMORANDUM**
**IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION**

**Background**

Plaintiff, Michael Renzi ("Renzi"), alleges that the termination of his employment in July 2004 by Deloitte Services, LP ("Deloitte") was the result of illegal age discrimination. At the time he was the Senior Manager for Industry Learning. This position was formally created on June 1, 2003 when Renzi began to report directly to Joseph Gibbons ("Gibbons") who was Deloitte's National Director of Learning.

Deloitte's United States operations are organized into three primary function groups: audit, tax and consulting. Gibbons depo. 15:22-16:3. From 1987 to 1999, Renzi was a self-employed sales training, management development and information systems consultant. This included instructor-led delivery of training and learning consulting. Deloitte was one of his major clients. Renzi depo. 13:12-14:10. His consulting work with Deloitte was primarily within the audit function. Renzi depo. 18:4-14. In 1999 Renzi was hired by Deloitte as Manager of Industry Learning within the audit function. His responsibility was to understand and implement learning programs for Deloitte's auditors as related to various industries to which Deloitte provided audit services, such as banking, retail, construction and manufacturing. Renzi depo.

24:1-25-6.

While responsible for industry learning within audit, Renzi reported to Tom Mitchell who had hired him. Renzi depo 24:8-22. In 2002, Renzi's responsibilities were expanded to include industry learning for the entire company including the tax and consulting functions. In June 2003 Renzi began to report directly to Joseph Gibbons, Renzi depo. 52:11-53:19. Despite his added responsibilities, Renzi was literally a one man department. Gibbons depo. 52:10-14.

In the fall of 2003, Gibbons completed a Performance Evaluation of Renzi. On a scale of 1 to 5, he rated Renzi a 2 which meant he was "exceeding expectations" Gibbons depo. 60:1-16. On November 14, 2004, Gibbons sent an e-mail to his boss, Mark Chain, nominating Renzi for a program which could lead to his appointment as a firm director - of which there are only 1200 of approximately 35,000 U.S. employees. Gibbons depo 61:20-62:16. Gibbons recommendation stated: "Mike is a high performer who has access and influence with a wide variety of firm leaders. His internal clients are very pleased with their interactions with Mike. A promotion to firm director will not only recognize his fact contributions but also grant him greater access and more equal footing with his internal clients" Gibbons depo 70:1-71:1. Since 2001 Gibbons has only nominated four individuals to the program. Gibbons depo 68:8-11 .

In May 2004 Gibbons submitted his proposed budget for his National Education & Development (NED) group for Deloitte's 2005 fiscal year which commenced June 1, 2004. For FY'04, NED's budget was approximately $41 million of which $2,279,000 was allocated to Renzi for Industry Learning. Gibbons depo. 71:24-77:8. In preparing his FY'05 budget Gibbons had been directed to reduce his prior year budget by 15%. He therefore submitted a total NED core budget request of $36 million with Industry Learning being reduced by

$120,000. Gibbons also requested a supplemental budget seeking an addition $19 million if funding was available. Gibbons dep. 81:2-82:10.

After submitting his budget request, Gibbons was informed that his FY'05 budget would have to be reduced by $430,000 compared with the FY'04 expenses. Deloitte Answers to Interrogatories No. 25, Gibbons depo. 86:1-87:22. At his deposition, Gibbons was unable to recall the actual amount of the final approved FY'05 budget. Gibbons depo 87:16-88:20. The total NED budget Gibbons had requested for FY'05 was $36M. He testified that NED's actual FY'06 budget grew to $73 million and that his present FY'07 budget is $82 million. He conceded that his budget has doubled from $41 million in FY'04 to $82 million for FY'07. Gibbons depo 89:3-18.

**Argument**

**The Documents Requested in Plaintiff's Second Request for Production are Relevant, Material and Limited in Scope**.

On July 5, 2006, after receiving the transcript of Joseph Gibbons' deposition testimony, plaintiff served his Second Request for Production, a copy of which is attached as Exhibit A. The documents sought in Requests 1 through 5 include approved, supplemental and actual NED budgets for FY'05 through FY'07. In its Response, Deloitte objected to producing any of the requested documents. See attached Exhibit B. Deloitte has previously produced Gibbons' initial proposed budget for FY'05, but NOT the approved budget and the actual expenditures for the fiscal year in which Renzi was terminated. Gibbons has testified that there was a supplemental budget in FY'05 but he wasn't sure of the amount. Gibbons depo. 145:22-146:1. The requested documents are certainly relevant to Renzi's claim that Deloitte's defense that his termination was

due to budget constraints is pretextual and that he was terminated by Gibbons due to his age. In fact Gibbons' has admitted that in discussing his proposed layoffs with a Deloitte employee relations specialist, the ages of the employees being considered for termination was discussed. Gibbons depo 95:8-108:4.

In addition to the updated budget information, plaintiff's Request No. 6 seeks information regarding payment to outside consultants in support of industry learning. This information is relevant to the scope of the alleged budget constraints faced by Deloitte as well as Gibbons total failure to determine if their were other positions or services within Deloitte for which Renzi was qualified.

Requests 6 and 7 seek information regarding the current organizational chart and list of NED employees, Deloitte has previously provided such information as of Renzi's termination in 2004. Plaintiff believes that there are now multiple employees performing the functions previously performed by Renzi at a cost to Deloitte far in excess of that which would have been attributable to Renzi had he not been terminated. Plaintiff's counsel recently took the deposition of Jill Silverstein ("Silverstein") who is Deloitte's National Industry Leader for the financial services sector - one of the eight strategic industries which Deloitte serves. Silverstein depo 16:5-17:1. Her current annual salary is $174,000. (At the time of his termination, Renzi was earing $160,000 per year. Silverstein depo. 22:8-16.) She had a FY'06 budget of $1.6 million. Silverstein depo 19:2-13. Mary Duncan is the National Learning Director for the other <u>seven</u> industries. Silverstein depo 17:23-18:2. The documents which Deloitte has refused to produce include information regarding the compensation being paid to both Silverstein and Duncan and their budgets. From Silverstein's testimony, there now are at least two younger highly

compensated employees performing the work previously done by Renzi. The requested documents will show that rather than save money by terminating Renzi, Deloitte's Industry Learning costs have increased significantly over the past two years.

Respectfully submitted,

/s/ James H. Reilly
JAMES H. REILLY #0658
KELLY, KELLEHER, REILLY &
SIMPSON
Attorneys for Plaintiff
146 Westminster Street - Suite 500
Providence, Rhode Island 02903-2202
(401) 272-1312
(401) 331-9397) fax

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 29, 2006, and that there are no non-registered participants.

/s/ James H. Reilly