UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL RENZI,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE SERVICES LP,<br><br>Defendant. | Civil Action No. 05-290T |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPEL PRODUCTION**

Defendant Deloitte Services LP ("Deloitte Services") hereby opposes Plaintiff Michael Renzi's ("Renzi") Motion to Compel Production of Documents (Plaintiff's "Motion"). Plaintiff's Motion should be denied because it seeks documents that: (1) do not exist; (2) are wholly irrelevant to the issues in this case; and/or (3) contain private information about nonparty individuals which is not relevant to this lawsuit. Plaintiff, who is claiming that his termination was as a result of age discrimination, now seeks to obtain documents that post-date Deloitte Services' business decision to lay him off in July, 2004, claiming that Deloitte Services' financial health *years after the termination* are relevant to the issue of whether Deloitte Services' decision to terminate him in July, 2004 was motivated by age animus. In short, the documents Plaintiff now seeks fall well outside the scope of information reasonably calculated to lead to the discovery of admissible evidence. Deloitte Services has provided Plaintiff with all discoverable documents concerning its budget and organizational staffing chart during the relevant time period. As set forth below, Plaintiff's Motion should be denied.

**INTRODUCTION**

Mr. Renzi claims he was discriminated against because of his age when Deloitte Services eliminated his position as Industry Learning Director and laid him off in July 2004. Discovery has established that Mr. Renzi's age had nothing to do with Deloitte Services' decision to eliminate his position; rather, his position was eliminated due to budget cuts and a determination that his responsibilities could be distributed among other Deloitte Services employees. Mr. Renzi himself acknowledges that Deloitte Services had serious doubts about the business necessity of his position,[1] and does not dispute that other existing employees assumed his responsibilities after he was terminated. It is also undisputed that just before the termination, Mr. Gibbons, Mr. Renzi's boss, was instructed to reduce his budget for fiscal year 2005, and that Mr. Gibbons did so. Indeed, in order to make the necessary budget cuts, Mr. Gibbons was directed to reduce staff and eliminate those positions which had responsibilities that could be "double-hatted" by other existing employees. Gibbons Dep. 90:24-91:13; Renzi Dep. 67:16-68:3; 70:4-12; 82:9-17; 83:4-10; 115:8-19. Based on feedback received from internal clients that Mr. Renzi often acted as "the middle-man (adding no value)",[2] and his own appraisal of Mr. Renzi's position at the time, Mr. Gibbons concluded that Mr. Renzi's work did not require the efforts of a full-time employee. Gibbons Dep. 90:17-91:13; 112:21-114:20. Accordingly, Mr. Gibbons selected him for termination, along with three other individuals (ages 32, 40 and 52) in Learning. Deloitte Services' Int. Ans., No. 18.

---

[1] Specifically, Mr. Renzi acknowledged that management "lack[ed] … recognition or understanding of the critical importance of Industry [learning] practices to the success of the firm." (Renzi Dep. 114:15-116:16; 118:15-121:24).

[2] Renzi Dep. Exh. 3. At his deposition, Mr. Renzi acknowledged that this feedback from Deloitte Services's manufacturing industry leader was not particularly flattering. Renzi Dep. 107:8-108:24. Mr. Renzi also acknowledged that the manufacturing industry was one of the most important industries that he served. Id. at 108:4-11.

Mr. Renzi evidently believes that he must have been discriminated against because his position was too "important" to have been eliminated and that he "was the only person with knowledge, experience and strategic learning relationships with key Industry partners." Plaintiff's Int. Ans., No. 3(a). The only written evidence Mr. Renzi identified to support his discrimination claim was a page of handwritten notes allegedly citing age considerations as a basis for termination or retention, which Mr. Renzi mistakenly assumed were prepared by Mr. Gibbons. Renzi Dep. 147:16-148:10. At Mr. Gibbons' deposition, however, Mr. Renzi learned that the notes, in fact, had been prepared by Michele Sommer, a senior manager in National Employee Relations, while conducting an "adverse impact analysis" and confirming with Mr. Gibbons that his termination selections *did not* have a disparate impact on employees in protected classes for age, race and gender. Gibbons Dep. 91:22-16, 93:9-94:3. In short, rather than being the 'smoking gun' which Mr. Renzi believed established age discrimination, the document buttressed Defendant's position that it conducted proper due diligence to ensure that individuals in protected categories, including age, were not adversely impacted by the termination.

Mr. Renzi also learned at Mr. Gibbons' deposition that Deloitte Services' fiscal 2007 budget has exceeded projections, and has doubled from what it was in 2004. Apparently realizing that he has no case, but apparently believing that Deloitte Services has money to burn, Mr. Renzi then served Deloitte Services with a second set of document requests dated July 5, 2006, only three weeks before the close of discovery. Notably, despite receiving over 330 pages of documents with Deloitte Services' initial disclosures in January 2006, and Deloitte Services' answers and objections to his first set of document requests in March, it was not until early July, on the heels of Mr. Gibbons' deposition, that Mr. Renzi requested the additional documents he

now seeks concerning budget and staffing of the Learning department for years after the July, 2004 termination, up to and including the present.

Deloitte Services responded and objected to Plaintiff's second set of document requests on grounds that the documents requested are irrelevant, and either do not exist or contain private information about irrelevant non-parties to this case. Plaintiff's counsel then filed a Motion to Compel Production of these documents. Deloitte Services hereby opposes Plaintiff's motion.

**ARGUMENT**

**I. The Requested Documents are Completely Irrelevant to Any of the Issues in this Case.**

All of Plaintiff's Requests seek documents concerning Deloitte Services' budget and staffing that post-date Deloitte Services' business decision to lay him off in July 2004, up to and including the present. None of these documents is relevant to this case. Deloitte Services' decision to terminate Mr. Renzi (among others) was based on financial projections for fiscal year 2005 -- *at the time of the termination.* Indeed, Deloitte Services has already provided Mr. Renzi with all of the relevant documents for that time period, including an itemized proposed budget for fiscal year 2005. This was the proposed budget that actually caused the July 2004 termination. Deloitte Services also produced the organizational charts listing the individuals who were employed at the time of the termination, *as well as those who were employed in the fiscal year following the termination.* As set forth below, Mr. Renzi's requests for additional documents come nowhere close to being reasonably calculated to lead to the discovery of admissible evidence.

**A. Document Requests No. 1, 2 and 3.**

The documents relating to later budget appropriations in 2005, 2006 or 2007 that Mr. Renzi seeks in Requests No. 1 through 3 have absolutely no bearing on Mr. Renzi's ability to

establish pretext. Indeed, it is well-settled that "the ADEA is not a vehicle for reviewing the propriety of business decisions" and that "[f]inancial evidence suggesting that a decision, in hindsight, may not have been prudent is not evidence of improper motive." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 929 F. Supp. 555, 561 (D.P.R. 1996)) (quoting Furr v. Seagate Technology, 82 F. 3d 980, 986 (10th Cir. 1996)), aff'd, 120 F.3d 328 (1st Cir. 1997). Even assuming that these documents could establish an initial miscalculation of the need for a budget cut, such documents are nevertheless irrelevant to Plaintiff's burden here. In Hidalgo, for example, the district court specifically rejected as irrelevant plaintiff's allegations "that defendant improperly calculated the declining insurance revenues from [the division in which plaintiff had worked], and that such dismal portrayal of the division's economic forecast is a subterfuge to justify his dismissal due to his reluctance to retire." 929 F. Supp. at 561. Rather, the court emphasized plaintiff's burden of showing *discriminatory animus*, not "erroneous or even illogical business judgment." Id.

Similarly, "evidence tending to show [defendant's] financial health and profitability" is not evidence of improper motive. Furr, 82 F. 3d at 986. Indeed, as his memorandum concedes, Mr. Renzi seeks only to demonstrate Deloitte Services' financial growth and success years after the termination occurred. He is attempting to play 'Monday morning quarterback' by challenging, with hindsight, the logic of Deloitte Services' business decision made in July, 2004. See, e.g., Dias v. Wal-Mart Stores, Inc., No. 04-379T, 2006 WL 334657, at *5 (D.R.I. Feb. 2, 2006) (Torres, J.) ("[c]ourts may not sit as super personnel departments, assessing the merits — or even the rationality — of employers' nondiscriminatory business decisions") (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).

Plaintiff's argument with respect to the "supplemental budget" for fiscal year 2005 that he seeks through Request No. 1 is likewise misplaced. To the extent Mr. Gibbons later received any supplemental appropriations for functions other than Industry Learning within National Education & Development in the fiscal year following the termination, such information is irrelevant to Mr. Renzi's claims for the same reasons previously stated. Indeed, Mr. Renzi's position was eliminated within the *Industry Learning* function, because Deloitte Services, in exercising its business judgment, deemed the cost of supporting that function an unnecessary expense (as Mr. Renzi readily admits).[3] Whether or not Deloitte Services allocated monies to other cost centers has no bearing whatsoever on Mr. Renzi's claims.

At best, the only relevant document concerning Mr. Renzi's claims would be, as he requested, "an itemized list of supplemental distribution under the … Industry [Learning] function", because Mr. Renzi's position had been eliminated within the Industry Learning function. However, as Deloitte Services stated in its Response to Request No. 1, it cannot produce such a list *because no supplemental funding was granted to the Industry Learning function, and thus no itemized list exists*. Where no such list exists, Deloitte Services cannot be ordered to provide it. Accordingly, this Court should deny Plaintiff's Motion as to Requests No. 1 through 3.

**B. Document Request No. 4.[4]**

As with Requests 1 through 3, Request No. 4 seeks financial documents relating to payments made to "outside consultants to support the industry learning function" for fiscal years 2005, 2006 and 2007. Such budgetary information is irrelevant for the same reasons the

[3] See footnote 1 above.

[4] Plaintiff's Memorandum mistakenly refers to this request as "No. 6", and later mistakenly refers to Requests numbers 5 and 6 as "6 and 7". Plaintiff's Second Request for Production only contains six numbered requests, however, and there is no Request No. 7.

documents sought by Requests No. 1, 2 and 3 are irrelevant. Moreover, Request No. 4 is ambiguous and overbroad because, as Mr. Renzi well knows, the entire role of the Industry Learning function is to coordinate the delivery of instructor-led training programs, which includes hiring hundreds of outside consultants to conduct such training. Thus, to the extent Mr. Renzi seeks such information, it is not only irrelevant but overly broad and unduly burdensome.

Assuming however, as Plaintiff argues, that he seeks this information to demonstrate Mr. Gibbons' alleged "failure to determine if their [sic] were other positions or services within Deloitte Services for which Renzi was qualified", his argument is equally unavailing. Deloitte Services had no legal obligation to find or offer Mr. Renzi another job position when it terminated his employment. See, e.g., Webber v. Int'l Paper Co., 417 F.3d 229, 240 (1st Cir. 2005) ("an employer undertaking a RIF is not required to offer an employee a transfer to another job position") (citations omitted); Varela Teron v. Banco Santander de Puerto Rico, 257 F. Supp. 2d 454, 461 (D.P.R. 2003) (noting that "[a]n employer does not have the duty to offer a transfer or relocation to another position to a person affected by a layoff") (citing Holt v. The Gamewell Corp., 797 F.2d 36, 38 (1st Cir. 1996) (Mass.)). Moreover, even if Mr. Renzi could make out such claim, Mr. Gibbons *did* attempt to place him in another position for which he was qualified prior to terminating him — notwithstanding Mr. Renzi's bald assertions to the contrary — and determined that no such positions were available. Gibbons Dep. 122:18-123:18; 124:20-125:9. Accordingly, Plaintiff's Motion must be denied with respect to Request No. 4.

## II. Personal Information of Deloitte Services' Current Employees is not Only Irrelevant and Unnecessary, but also Violates Their Rights to Privacy.

As with Plaintiff's Document Requests Nos. 1 through 4, Requests Nos. 5 and 6 seek documents that post-date the termination decision by well over two years. Request No. 5 specifically seeks the *current* organizational chart for the entire National Education &

Development ("NED") department, and Request No. 6 seeks the *current* list of NED employees in a format which includes their hire dates, birthdates, office locations, positions, performance ratings, proposed performance ratings, and other comments. As with Mr. Renzi's prior requests, such information is irrelevant to Mr. Renzi's claims given the fact that these documents post-date the July, 2004 termination by years. Deloitte Services has already produced such information relating to the individuals who were employed at the time of the termination in July 2004, and for the fiscal year (2005) immediately following the termination, including those employees who assumed Mr. Renzi's duties along with their existing duties. The present composition of Deloitte Services' Learning personnel in fiscal year 2007 is wholly irrelevant to the termination decisions it made three years ago. See, e.g., Furr, 82 F. 3d at 986 ("[p]laintiff's attempt to use defendant's pre- and post-RIF hirings as evidence of pretext ignores the timing of the hirings").

Requests Nos. 5 and 6 also seek documents containing private information about dozens of third party employees unrelated to this case. Several of these individuals live and work in states outside of Rhode Island, and may assert claims under state privacy laws if such personal information were disclosed. See, e.g, Remsberg v. Docusearch, Inc., No. Civ. 00-211-B, 2002 WL 844403, at *1, 4 (D.N.H. Apr. 25, 2002) (certifying the question of whether certain types of disclosure of a person's work address violates New Hampshire's privacy statute); cf. Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995) (noting "personnel files contain perhaps the most private information about an employee within the possession of an employer").

Mr. Renzi has offered no legitimate basis for why he needs these documents, or how the information contained in these documents could conceivably outweigh the privacy interests of Deloitte Services' employees, as he must. See Whittingham, 164 F.R.D. at 127-128 (denying

plaintiff's motion to compel personnel information because "[p]laintiff has not demonstrated that the [documents] he seeks, even if marginally relevant, outweigh the privacy interests of these individuals"). Indeed, Mr. Renzi has failed to demonstrate that any of the documents he now seeks will yield anything more than the 330 pages of documents he has already obtained. Cf. Cabana v. Forcier, KNA Trucking Co. Inc., 200 F.R.D. 9, 15 (D. Mass. 2001) (denying motion for extension of discovery where plaintiff failed to show that the additional discovery sought would not be duplicative of previously obtained discovery).

Mr. Renzi's bald assertions notwithstanding, Deloitte Services already provided him with all of the identities, ages, hire dates, employment status, salary and other information of the employees who assumed the duties of his former position after he was laid off (including Mary Duncan), and Mr. Renzi has already noticed and/or taken these individuals' depositions. Mr. Renzi's own arguments about Ms. Duncan and Jill Silverstein's positions, salaries and budgets demonstrate that fact. At bottom, Mr. Renzi's arguments are simply another effort to justify his desire to obtain the budgetary information he already requested in Requests No. 1-4 . His arguments do not demonstrate, however, why he is entitled to the birthdates, addresses, performance ratings and the like of every other employee who presently works in entire National Education & Development department. Because Mr. Renzi cannot demonstrate that his need for this irrelevant information outweighs these individuals' privacy interests, his motion as to Requests Nos. 5 and 6, should be denied.

## CONCLUSION

For the foregoing reasons, Deloitte Services respectfully requests that Plaintiff's Motion to Compel Production be denied in its entirety.

DELOITTE SERVICES LP,
By its attorneys,

/s/ Timothy P. Van Dyck

Timothy P. Van Dyck (BBO No. 548347 )
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 239-0100
(617) 227-4420 (fax)

and

Darlene K. Alt (#6345)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 30, 2006, and that there are no non-registered participants.

/s/ Timothy P. Van Dyck